IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SEABOARD CORPORATION, SEABOARD OVERSEAS LIMITED, AND SEABOARD OVERSEAS TRADING AND SHIPPING (PROPRIETARY) LIMITED, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 05-1229-CV-W-FJG ) |
| GRINDROD LIMITED, KEVIN NEILSON, ATLAS TRADING & SHIPPING LIMITED, GRINDROD INTERNATIONAL LIMITED, AND UNICORN SHIPPING (PROPRIETARY) LIMITED, | ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER

Currently pending before the Court is Defendant Neilson's Motion to Dismiss for Lack of Jurisdiction or in the Alternative to Stay and Compel Arbitration (Doc. # 6); Plaintiffs' Motion to Remand (Doc. # 8); Plaintiffs' Motion and Amended Motion for the Issuance of Letters Rogatory (Docs. # 14, 15); Defendant Neilson's Motion to File Further Affidavit in Opposition to Plaintiffs' Motion to Remand (Doc. # 24), Defendant Neilson's Motion and Amended Motion for Leave to File Excess Pages for His Reply Suggestions in Support of His Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docs. # 25, 26); Plaintiffs' Second Motion to Remand (Doc. # 30) and Defendant Atlas Trading & Shipping and Grindrod's Motion to Dismiss for Lack of Jurisdiction or Alternatively to Stay This Action Pending New York Arbitration (Doc.# 33).

1

## I. BACKGROUND

In April 1995, Kevin Neilson began working with Seaboard Commodity Trading Group, Ltd, as a Vice-President. He remained in this position until March 17, 1999, when he accepted employment with Seaboard Overseas Ltd. ("SOL") as its Executive Vice-President and General Manager. He began his employment as Executive Vice-President and General Manger of SOL in Bermuda on April 12, 1999 and remained in that position until July 1, 2002. While he was employed by SOL, Neilson was internally classified as a foreign service employee because SOL required him to perform his job duties in Bermuda. SOL issues employment offer letters to all foreign service employees. SOL does not issue employment offer letters to employees whose job duties are based in the United States. In December 2000, Neilson relocated from Bermuda to North Carolina. SOL then sent Neilson a new foreign service employee offer letter on or about January 1, 2001. The letter states that Neilson remained a foreign service employee of SOL and was still required to perform his duties in Bermuda. The letter also contained an arbitration clause. Seaboard signed the letter and sent it to Neilson for his acceptance and signature. However, Neilson never signed or returned the letter.

On July 1, 2002, Neilson left SOL and became the Vice-President of Grains and Trading for Seaboard Overseas and Trading Group ("SOTG"). In the summer of 2002, Neilson relocated to the Kansas City area, worked out of the Merriam, Kansas headquarters and was classified as a domestic employee. SOTG does not issue employment agreements or offer letters with arbitration clauses to domestic employees

2

whose job duties are based in the United States. Neilson remained in his position with SOTG until his resignation on April 27, 2005.

In January 2005, Neilson was approached by Grindrod Limited, South African's leading shipping and logistics company about pursuing a joint venture with or acquiring the assets of plaintiffs' profitable overseas shipping and trading business. Neilson was entrusted with discussing and negotiating a possible sale or joint venture with Grindrod. Plaintiffs allege that Neilson engaged in secret negotiations with Grindrod to implement a conspiracy to force plaintiffs to transfer their overseas shipping and trading business to Grindrod for a price which was below fair market value. Plaintiffs allege that as a result of his actions, Neilson breached his fiduciary duties, the confidentiality agreement he signed and committed various other tortious acts.

Plaintiffs filed their Petition against Neilson in Jackson County, Missouri on August 26, 2005. Neilson filed his Notice of Removal on December 8, 2005. In the Notice of Removal, Neilson states that Removal is predicated on 9 U.S.C. § 205. Chapter 2 of Title 9 implements the International Convention for the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 (the "New York Convention"). Neilson states that until he resigned, he was a party to an employment contract with Seaboard Overseas Limited, dated January 1, 2001. He relies on ¶ 16 of the employment letter which states in part:

> Any dispute between any of the parties hereto or claim by a party against another party arising out of or in relation to this agreement or in relation to any alleged breach thereof shall be finally determined by arbitration in accordance with the rules then in force of the American Arbitration Association by a panel of three arbitrators. The arbitration proceedings shall take place in New York, New York or such other location as the parties in dispute hereafter may agree upon; and such proceedings

3

shall be conducted in the English language and shall be governed by the laws of Bermuda. . . .

Neilson argues that plaintiffs' claims and causes of action "arise out of" or are "in relation to" the employment contract and relate to "an alleged breach thereof." Thus, he argues that plaintiffs' claims are subject to arbitration.

## II. STANDARD

Defendant Neilson bases his removal on 9 U.S.C. § 205, the International Convention for the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). This provision states:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. . . .

9 U.S.C. § 202 provides:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in Section 2 of this title, falls under the Convention . An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

Article II of the Convention further states: "The term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties

4

or contained in an exchange of letters or telegrams."

The Eighth Circuit has stated that the Federal Arbitration Act,

> limits a district court's initial role in any challenge to an arbitration agreement to deciding whether 'the making of the agreement for arbitration or the failure to comply therewith' is at issue. 9 U.S.C. § 4 (2000). As to whether 'the making of the agreement for arbitration' is in issue, id., our Circuit has refined this inquiry to asking 1) whether the agreement for arbitration was validly made and 2) whether the arbitration agreement applies to the dispute at hand, i.e., whether the dispute *falls within the scope* of the arbitration agreement.

Medcam, Inc. v. MCNC, 414 F.3d 972 , 974 (8th Cir. 2005).

Similarly, in Clarus Medical, LLC v. Myelotec, Inc., No. Civ. 05-934 DWF/JJG, 2005 WL 3272139 (D.Minn. Nov. 30, 2005), the Court stated:

> An order to compel arbitration should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. . . . However, parties cannot be forced to submit to arbitration a dispute that the parties have not agreed to submit, because arbitration is a matter of consent, not of coercion.

Id. at *3 (internal citations and quotations omitted).

### III. DISCUSSION

**A. Plaintiffs' First Motion to Remand**

Plaintiffs move to remand because they argue that the arbitration clause contained in the January 1, 2001 is not applicable. First plaintiffs state that the January 1, 2001 letter was never signed by Neilson. Under the Convention, plaintiffs argue that an "agreement in writing" must be either a signed contract or a signed arbitration agreement or an exchange of letters demonstrating an intent to arbitrate. Secondly, plaintiffs argue that the unsigned letter on which Neilson relies is an offer letter for his

5

previous position, as Executive Vice-President and General Manager of SOL, a position he left in July 2002. The conduct of which plaintiffs are complaining occurred in 2004 and 2005, while he was employed with the SOTG. Thus, they argue even if the letter was effective, it was no longer in force once he left SOL for a new job.

Neilson argues that the January 1, 2001 Employment Agreement is the Governing Agreement and that this agreement with SOL continued to govern until his resignation in 2005. Neilson also argues that the Employment Agreement meets the writing requirement of the Convention, because even though he did not sign the letter, plaintiffs signed it. Neilson states that plaintiffs do not deny that they intended to agree to arbitrate disputes with Neilson under the agreement.

Plaintiffs argue that the Second, Third and Eleventh Circuits are in agreement with the rationale of Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd., 186 F.3d 210, 215 (2d Cir. 1999), abrogated on other grounds, Sarhank Group v. Oracle Corp., 404 F.3d 657, 660 n. 2 (2d Cir. 2005). In Kahn, the Court found that the signature requirement applied to both an arbitration agreement and an arbitral clause. Additionally, plaintiffs state that Neilson's suggestion that they are attempting to avoid an arbitration agreement that they drafted is nonsense, because Neilson left his foreign service employment with SOL on or before July 2002. Thus, the unsigned offer letter could not govern his domestic employment with a different employer.

The Court agrees with plaintiffs that defendant has not satisfied his burden of establishing removal jurisdiction. As noted previously, the Court must determine first whether a valid agreement to arbitrate existed between the parties. Based on an examination of the undisputed facts, the Court finds that there was no agreement.

Article II of the Convention specifically calls for "an agreement in writing." The January 1, 2001 Offer of Employment letter related to Neilson' position as Executive Vice President/General Manager of Seaboard Overseas Limited. Even though the letter was signed by Seaboard, it is undisputed that it was never signed by plaintiff. Additionally, even if plaintiff had signed the letter, the letter no longer applied, because the conduct of which plaintiffs complain occurred long after plaintiff had left his position as Executive Vice President of SOL in 2002. It is also undisputed that after plaintiff left his position with SOL and transferred to SOTG, he became a domestic employee and Seaboard does not give offers of employment letters to its domestic employees. Thus, because the Court finds that there is no agreement in writing to arbitrate, the Court finds that the Convention does not apply and there is no subject matter jurisdiction. Therefore, the Court hereby **GRANTS** plaintiffs' first Motion to Remand (Doc. # 8).

    **B. Plaintiffs' Second Motion to Remand**

    Defendants Atlas Trading & Shipping Limited ("Atlas") and Grindrod International Limited ("Grindrod") also filed a Supplemental Notice of Removal and Consent to Removal. They argue that removal is properly predicated on 9 U.S.C. § 205. These defendants argue that plaintiffs' claims and causes of action against Atlas and Grindrod concern acts allegedly committed relating to and in connection with a transaction by which Atlas purchased certain assets from plaintiffs in May 2005. The transaction is memorialized in an Asset Purchase Agreement dated May 24, 2005 between Seaboard Overseas Limited ("SOL") and Atlas and Grindrod on the other. The Asset Purchase Agreement contains a clause which states as follows:

7

> Any Dispute must be exclusively and definitively resolved through final and binding arbitration. The Parties agree that this is a broad form arbitration agreement designed to encompass all possible Disputes, including Disputes over arbitrability or jurisdiction.

Section 9.07 (a).

The word "dispute" as used in the preceding paragraph is defined in the Agreement as follows:

> Any dispute, controversy or claim (of any and every kind or type, whether based on contract, tort, statute, regulation, or otherwise) arising out of, relating to, or connected with this Agreement or the actions carried out under this Agreement, including any dispute as to the construction, validity, interpretation, enforceability or breach of this Agreement.

Defendants Atlas and Grindrod state that because plaintiffs' complaint "relates to" the arbitration provision in the Agreement, they are entitled to remove the captioned action to this Court.

Plaintiffs filed a second motion for remand and argue that they are not seeking to enforce or rescind the Agreement nor have they claimed any damages for its breach. Plaintiffs state that none of their claims are based on the Agreement's construction, validity or enforceability. Plaintiffs argue that all of their causes of action relate solely to the conduct of Atlas and Grindrod that took place *before* the Agreement was ever signed. Plaintiffs state that for the Convention to apply, the dispute must arise out of a commercial transaction and involve a controversy *thereafter* arising out of such contract or transaction. Plaintiffs state that the entirety of their claims are based on the conduct of Atlas and Grindrod that occurred from January 2005 until May 2005, and none of their claims relate to conduct that occurred after execution of the Asset Purchase Agreement.

Atlas and Grindrod argue that the issue of whether plaintiffs' claims are covered by the Convention is itself subject to arbitration. They base this argument on the broad arbitration clause contained in Section 9.07(a) of the Asset Purchase Agreement, "[t]he parties agree that this is a broad form arbitration agreement designed to encompass all possible Disputes, *including Disputes over arbitrability or jurisdiction.*" Additionally, they argue that the definition of dispute extends to all claims "arising out of, relating to, or connected with" the Agreement.

The Court disagrees with defendants that the question of whether plaintiffs' claims are covered is itself subject to arbitration. As the Court in <u>Clarus Medical</u>, 2005 WL 3272139, stated:

> In a petition to compel arbitration, the Court is required to determine whether: (1) a valid agreement to arbitrate exists between the parties; and (2) the specific dispute is within the scope of that agreement.

<u>Id</u>. at *3. The Court also stated, "[a]n Order to compel arbitration should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." <u>Id</u>. (internal citations and quotations omitted). In the instant case, plaintiffs have affirmatively stated that their claims and causes of action do not relate to the Asset Purchase Agreement. Plaintiffs state that their allegations and claims regarding Atlas and Grindrod all relate to the actions of these defendants in the months before the Agreement was executed. Plaintiffs argue that the only relevance the Asset Purchase Agreement has to the present case is the fact that it was executed, which shows that the defendants successfully conspired to force plaintiffs to transfer its business assets to Grindrod and Atlas.

9

The Court agrees with plaintiffs and finds that the plaintiffs' claims do not arise out of the Asset Purchase Agreement. The Asset Purchase Agreement defines a dispute as all claims "arising out of, relating to, or connected with" the Agreement. Plaintiffs claims do not relate to the Agreement. Plaintiffs have asserted claims against Atlas and Grindrod involving civil conspiracy, tortious interference with contract, aiding and abetting a breach of fiduciary duty and tortious interference with prospective business expectancy or prospective business relationship. They are not seeking in their petition to enforce or rescind the Agreement, nor are they seeking damages for a breach of the Agreement. Therefore, the Court finds that the plaintiffs' petition does not fall within the scope of the Arbitration clause contained in the Asset Purchase Agreement. Because this dispute is not covered by the arbitration clause, the Convention does not apply and the Court lacks subject matter jurisdiction. Therefore, the Court hereby **GRANTS** plaintiffs' Second Motion to Remand (Doc. # 30).

Accordingly, this case is hereby **REMANDED** to the Circuit Court of Jackson County, Missouri at Kansas City. The Clerk of the Court is directed to mail a certified copy of this Order to the Clerk of the Circuit Court of Jackson County, Missouri at Kansas City as required by 28 U.S.C. § 1447(c).

### IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **GRANTS** plaintiffs' Motions to Remand (Docs. # 8, 30). The Court also **GRANTS** defendant Neilson's Motion for Leave to File Further Affidavit in Opposition to the Motion to Remand (Doc. # 24); **GRANTS** Neilson's Motion and Amended Motion for Leave to File Excess Pages

10

for His Reply Suggestions in Support of His Motion to Dismiss for Lack of Jurisdiction (Docs. # 25, 26)

The Court hereby **DENIES** as **MOOT** Defendants' Motion to Dismiss for Lack of Jurisdiction or in the Alternative to Stay and Compel Arbitration (Doc. # 6); Plaintiffs' Motion and Amended Motion for Issuance of Letters Rogatory (Docs. # 14, 15) and Defendant Atlas and Grindrod's Motion to Dismiss for Lack of Jurisdiction or Alternatively to Stay this Action Pending New York Arbitration (Doc. # 33).

Date:  August 1, 2006  
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
United States District Judge